[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR CONTEMPT FILED JULY 30, 1998, ON MOTION FOR COUNSEL FEES BY THE ATTORNEY FOR THE MINOR CHILD FILED OCTOBER 22, 1998 AND THE DEFENDANT'S MOTION FOR CONTEMPT FILED FEBRUARY 17, 1999
This file first came to this Court by Summons and Complaint dated September 1, 1994 and returnable October 11, 1994 claiming a decree of dissolution of marriage and other relief.
In due course, the complaint was heard by the Court, Vasington, J., on October 4, 1996.
At the time of the hearing on October 4, 1996, the Plaintiff and the Defendant each appeared pro se and the interests of the minor child were represented by Attorney Kenneth Caisse.
At the time of the hearing on October 4, 1996, the Court dissolved the marriage and entered the following orders.
No award of alimony to the Plaintiff.
No order of support at this time (October 4, 1996) but the issue may be revisited on the Defendant's release.
Sole custody of the minor child Amber McKeever-Burdick, born March 8, 1992, to the Plaintiff mother.
The Defendant shall have the right to call the minor child one time per week prior to 7:00p. m. at his own expense by telephone, the call not to last more than 15 minutes. In addition he shall be entitled to write to the minor child as often as he wants to . . . the Defendant to have visits with his daughter once a month.
Note for a precise verbatim recitation of the Court's orders, CT Page 3752 see transcript of the proceedings, dated October 4, 1996, in the file.
In her July 30, 1998 contempt motion, the Plaintiff basically claims that during the visits at the correctional facility that the Defendant lies to the child Amber or creates false hopes in the child for the reestablishment of the family, all to the emotional damage and upset to this six year old child.
The October 22, 1998 motion is for consideration of counsel fees for the attorney for the minor child.
The February 17, 1999 motion for contempt by the Defendant claims that the Plaintiff has refused to allow the visitation rights of the Defendant with the minor child pursuant to the order of Vasington, J.
On March 5, 1999 the Plaintiff and the Defendant, with their respective counsel, appeared before the Court and were heard.
Attorney Caisse, counsel for the minor child, was also present and was heard.
The Court makes the following findings of fact.
The witness Donna H. DiCello holds a master's degree in clinical psychology and a PhD in clinical psychology from Antioch University.
Dr. DiCello is licensed as a professional counselor in Connecticut.
Dr. DiCello is employed at the Care Center in New London presently and has served at the Veterans' Hospital in West Haven, the Clifford Beers Center and Clinic in New Haven and the Child Guidance Clinic in Meriden.
Dr. DiCello has evaluated between 200 and 300 children in her professional career.
Dr. DiCello evaluated the minor child Amber, age 6, which evaluation included eight sessions of no less than 45 minutes each.
See Plaintiff's Exhibit 1 as concerns Dr. DiCello's findings CT Page 3753 and report.
Dr. DiCello found the child Amber an engaging child but guarded in her responses.
According to Dr. DiCello's testimony and her written report, the child does not wish to visit her parent father at the correctional facility, cries when the time of visits approach, and has nightmares concerning the visits.
During the interviews and sessions, Dr. DiCello found the child clean and neatly attired and observed a close relationship between the child and her mother.
Dr. DiCello was of the opinion that the visits by the child to the Defendant were now extremely stressful.
The child Amber is doing well in first grade in school and appears healthy according to Dr. DiCello.
Dr. DiCello stated to the Court that forced visits of the child to the correctional facility could damage the child emotionally.
Dr. DiCello recommends that the child's best interest require suspension of visits to the correctional facility by the child at this time and that the matter be reevaluated in six months.
The witness Suzanne Nasser, sister to the Defendant, described visits at Somers on occasions when she and her mother brought the child there, described the facilities at Somers for visitation, a playroom for the child and the degree of physical contacts allowed. These visits occurred four or five times and were during a period when Amber was age 3 and 4.
The Defendant is presently at the J.B. Gates facility at Niantic.
The child Amber has not visited at a correctional facility for at least the last 8 months.
There is no child playroom at J.B. Gates according to the testimony.
The witness Herbert Lewis, a relative of the Defendant, has CT Page 3754 not seen the child Amber in over one year and never attended at any correctional facility with her and has never taken the child anywhere.
The Defendant has been incarcerated since September 1994 at that time the child Amber was 2-1/2 years old.
The Defendant described the physical setting that existed at J.B. Gates during the child's visits there.
The Defendant indicates that at the correctional facility he attends school, works and attends chapel.
The Defendant has taken advantage of all available programs relative to drugs, alcohol and anger management.
The Defendant indicates he has earned six credits toward a college degree.
The Defendant assists the chaplain at religious services and works as a clerk at the facility.
Since 1994 the Defendant represents he has received only one ticket (reprimand) at the facility.
There have not been any visits with the child for more than eight months and no phone contacts according to his testimony for the last two years.
The Defendant acknowledged 46 arrests and/or convictions in his record including assaults on the Plaintiff.
The sentence presently being served by the Defendant is for 10 years.
The Defendant acknowledged having been convicted of burglary, larceny, robbery 1 and theft of a motor vehicle.
The Defendant has not made any significant financial contribution to the child's support in years.
The Defendant has three other children but they do not visit him.
The Defendant is age 40. CT Page 3755
The Plaintiff testified credibly that she was assaulted by the Defendant on a regular basis during their relationship and that the child Amber was a witness to this conduct.
Beginning in November of 1997, the child exhibited emotional problems whenever the issue of visitation with the Defendant came up, the child physically resisted visitation and had to be forced into the vehicle for the journey to the facility, the child cried and screamed.
In June of 1998 the Plaintiff decided to stop any efforts to compel the child to visit in that she felt it was in the child's best interest emotionally and physically.
Aside from problems arising out of visits to the correctional facility the child is described as happy, talkative and doing well at the Oakdale School in first grade.
The child's nightmares, which extended over a period of months, have now stopped.
While the Court is mindful of testimony concerning the Plaintiff's son, Nicholas, age 9, and has considered the same, the Court's principal focus is on the child Amber.
The Court feels on the basis of the testimony that neither the Plaintiff nor the Defendant have committed intentional contempt of any court orders.
The Plaintiff's claims that the Defendant filled the young child's head with lies has not been conclusively established and the Court is mindful of the child's age in making this observation.
On the other side of the coin, the Court feels that the Plaintiff's conduct in suspending the visitation for the child at the correctional facilities is justified because the Court believes she was genuinely motivated by what was in the child's best interest and the child's emotional stability.
The child Amber now age 6, is more cognizant and aware of people, settings (a correctional facility), conduct of other adults and comments and conduct of other children her age. CT Page 3756
While the child was age 2, 3 and 4, her overall conduct and reaction to her surroundings and peers was more passive than now at age 6.
The Court is persuaded that the child's best interest at this time require that she not be forced into visitation at a correctional facility to see her father no matter how well intentioned the Defendant claims to be.
The Defendant's admitted lengthy record and acknowledged assaults on the Plaintiff with the child as a witness cause the Court concern.
The Court is mindful of the Defendant's claim that in effect he has turned over a new leaf in life but the Court's paramount concern is the child.
The Court notes the lack of any letters to the child Amber as well as the lack of any cards or gifts from the Defendant or members of his family, and in addition, the lack of resort to telephone calls to the child for a long time.
Even if the physical visits didn't occur, the Defendant could have pursued other means of contact.
Needless to say, the child's conduct did not put the Defendant where he is today.
The Plaintiff shall not be obligated to require visitation between the Defendant and the child Amber at this time.
The issue may be readdressed in six months.
As to the issue of attorney's fees for counsel for the minor child, the Court is advised that Attorney Caisse has graciously waived any claim for fees for services to date.
This would appear to be in keeping with time honored traditions of the Bar in rendering pro bono services and the Court expresses its appreciation to counsel.
Austin, JTR CT Page 3757